IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

MATTHEW B. FRISCH, et al.,

    Plaintiffs,                                    Case No. 2:12-cv-415
                                                    Judge Gregory L. Frost
v.                                                      Magistrate Judge Mark R. Abel

**NATIONWIDE MUTUAL INSURANCE**
**COMPANY, et al.,**

    Defendants.

**OPINION AND ORDER**

This matter is before the Court on Defendants' motion to dismiss (ECF No. 10), Plaintiffs' opposition (ECF No. 15), and Defendants' reply in support (ECF No. 21). For the reasons set forth below, Defendants' motion is **GRANTED IN PART AND DENIED IN PART.**

                                                  **I.**        **Background**

This case arises out of a terminated business relationship between an insurance agent and an insurance company. Plaintiffs Matthew B. Frisch and The Frisch Agency LLC (collectively, "Frisch" or "Plaintiffs") allege that Defendant Nationwide Mutual Insurance Company ("Nationwide") wrongfully terminated an Agency Executive Program Performance Agreement that governed the parties' relationship. Plaintiffs further allege that Nationwide's termination of the parties' business relationship was the culmination of a scheme under which Nationwide lured agents into a performance agreement under which Nationwide never intended the agents to succeed. Plaintiffs further allege that Nationwide fraudulently induced Plaintiffs and other agents into entering the agreement that was eventually terminated.

Plaintiff Matthew Frisch alleges that in 2005, Nationwide district manager Jesse Gorczynski recruited Frisch to become a "career exclusive agent" with Nationwide's Agency Executive Program ("AE Program"). (Compl. ¶33, ECF No. 1.) Mr. Frisch and Nationwide entered into an Agency Executive Agreement ("AE Agreement") on September 1, 2005. (*Id.* at ¶ 35.) In connection with the AE Agreement, Plaintiff Frisch Agency LLC borrowed $250,000 from Defendant Nationwide Bank; Plaintiffs allege that entering into a loan agreement with Nationwide Bank was a mandatory condition of participating in the AE Program. (*Id.* at ¶¶ 34-35.)

At the same time that the parties entered into the AE Agreement, they also entered into a separate agreement, entitled the "Independent Contractor Agent's Agreement" ("IC Agreement"). (Compl. Ex. 5.) Under the terms of the IC Agreement, Nationwide formally appointed Mr. Frisch as its agent to represent Nationwide within the state of Pennsylvania. (*Id.* at 1.) The IC Agreement specified that Mr. Frisch was an independent contractor and not an employee. (*Id.* at Section 1) The IC Agreement also specified that either party to the IC Agreement could cancel the parties' agency relationship at any time. (*Id.* at 3, Section 10.)

As for the AE Agreement, Frisch was subject to certain production requirements. Under the terms of the AE Agreement, Frisch was given a 36-month production period, during which he was to generate $937,500 in direct written premiums, a figure arrived at through a formula specified in the AE Agreement. (*Id.* at ¶ 37.) If Frisch met the 36-month production goal, fifty percent of the outstanding balance of the loan from Nationwide Bank would be waived. (*Id.* at ¶ 37.) According to Frisch, however, Nationwide "sent misleading and deceptive reports" to Frisch, misstating a higher minimum production requirement. (*Id.* at ¶ 18, 39.) Frisch alleges that he was well ahead of his production requirements but that, by mid-2006, Nationwide was

"secretly planning to reduce the exclusive agent population" and did not intend for agents like Mr. Frisch to complete the initial agreement. (*Id.* at ¶ 41.) By the end of 2006, Frisch alleges that Nationwide "devised a plan" that would force agents to exit the AE Program or enter into modified AE Agreements that were "designed for failure." (*Id.*) Agents who chose to enter the modified AE Agreements would have to release Nationwide from liability for "all legal causes of action that had accrued up to that point." (*Id.*)

The Complaint alleges that Nationwide carried out that scheme in Frisch's case. On January 26, 2007, Frisch executed a Memorandum of Understanding ("MOU"). (Compl. Ex. 3.) The MOU recited that the parties intended to "resolve issues" in connection with the AE Program. Under the MOU's terms, in consideration of Nationwide's promise to pay $15,000 and to reimburse up to $35,000 in business related expenses, Frisch agreed to "completely release and forever discharge any and all claims which Agent may have against Nationwide, its affiliates, subsidiaries, successors and assigns, whether known or unknown, which were or could have been asserted against Nationwide from the beginning of time until the date of this MOU." (*Id.* at 1.) The MOU also specified that Frisch would prepare and submit to Nationwide a "Certified Business Plan" and that Nationwide and Frisch would thereafter develop a "Negotiated Business Plan." (*Id.* at 2.)

Frisch alleges that Nationwide showed no interest in reaching the Negotiated Business Plan described in the MOU. (Compl. ¶ 45.) Instead, in May 2008, Nationwide presented Frisch (and other agents) with a document called the "First Modification to Agency Executive Performance Agreement" ("Modified AE Agreement"). (*Id.* at ¶ 46 and Ex. 4.) Nationwide and Mr. Frisch executed the Modified AE Agreement on May 15, 2008. (*Id.* at ¶ 46.) Plaintiffs allege that Mr. Frisch "had no choice but to accept" this Modified AE Agreement.

3

According to Frisch, the Modified AE Agreement "was designed to set Mr. Frisch up for a termination during the first two quarters of 2009." (*Id.* at ¶ 47.)  Specifically, Frisch complains that the Modified AE Agreement changed the method of measuring adherence to the minimum production requirement to a "12 month moving period" and that a new "minimum production plan was imposed," with the effect of requiring "a temporary sharp increase in the amount of new business that Mr. Frisch would have to write." (*Id.* at ¶¶ 47a and 47b.)  Further, the Modified AE Agreement entitled Nationwide to terminate the agreement after the first six months if Frisch did not meet the new minimum production requirements for two successive quarters. (*Id.* at ¶ 47c.)

All of these terms Frisch complains of were spelled out in the Modified AE Agreement. Also contained in the Modified AE Agreement was another release, similar to the one in the MOU that Mr. Frisch signed in January 2007.  The release states that Frisch "hereby releases and discharges Nationwide . . . of any and all claims or causes of action Agent has in any way relating to the AE Program, the AE Agreement, and the IC Agreement from the beginning of time to the present, including, but not limited to, any claims for fraud, negligence, breach of contract, or any statutory claim." (Modified AE Agreement ¶ 19.)

Toward the end of Frisch's first six months of operating under the Modified AE Agreement, Frisch alleges that Nationwide approached Frisch with an "exit opportunity," wanting Frisch to "surrender the entire business to Nationwide" and depart as a Nationwide agent. (Compl. ¶ 50.)  Frisch declined to exit voluntarily.  As a result, Plaintiffs allege that Nationwide sent Mr. Frisch a notice in March 2009, stating that it was placing Frisch on "probation" because of a shortfall in minimum production requirements. (*Id.* at ¶ 53.)  The stated shortfall was $3,045 for the month of February 2009. (*Id.*)  Frisch denies that there was an

4

actual shortfall, alleging on information and belief that Nationwide underreported Frisch's actual figures.  (*Id.*)

After placing Frisch on probation, Nationwide allegedly continued to "pressure" Mr. Frisch to turn over his book of business and terminate his agency.  (*Id.* at ¶¶ 54-55.)  On September 4, 2009, after Mr. Frisch consistently declined to terminate his agency, Gorczynski delivered a letter to Mr. Frisch, titled "Notice of Cancellation of Agency Executive Program Performance Agreement and Corporate LLC Agency Agreement."  (*Id.* at ¶ 60.)  The letter stated that Nationwide was terminating Frisch due to a failure to meet minimum production goals under the Modified AE Agreement.  (*Id.*)  The Complaint alleges that Nationwide sold Frisch's book of business to another agent.  (*Id.* at ¶ 61.)

Plaintiffs filed this lawsuit on May 14, 2012, naming Nationwide Mutual Insurance Company and Nationwide Bank as defendants.  The Complaint alleges claims for breach of contract (Count 1), breach of the covenant of good faith and fair dealing (Count 2), and fraud (Count 3).  Nationwide moves to dismiss Plaintiffs' Complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.  (ECF No. 10.)  The parties have fully briefed Nationwide's motion to dismiss and the motion is now ripe for adjudication by this Court.

## II.     Discussion

Nationwide moves to dismiss Plaintiffs' Complaint in its entirety under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which a court can grant relief.  To survive a motion to dismiss, a complaint must provide fair notice of what the claim is and the grounds upon which it rests, and it must set forth sufficient factual allegations suggesting that the plaintiff is entitled to relief under those claims. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570, 127 S. Ct. 1955,

5

167 L. Ed. 2d 929 (2007) (citing *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)).  This Court must construe the complaint in the light most favorable to the plaintiff and treat all well-pleaded allegations contained therein as true.  *Id*. at 555-56.  For purposes of a Rule 12(b)(6) review, a court also considers exhibits attached to the plaintiff's complaint, such as the agreements in this case attached to Frisch's Complaint.  *See Followell v. Mills*, 317 F. App'x 501, 507 (6th Cir. 2009); *see also* Fed. R. Civ. P. 10(c).  The defendant bears the burden of demonstrating that the plaintiff has failed to state a claim for relief. *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).

Considering only the well-pleaded facts, a complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citing *Twombly*, 550 U.S. at 556). A plaintiff's factual allegations must be enough to raise the claimed right to relief above the speculative level and to create a reasonable expectation that discovery will reveal evidence to support the claim. *Twombly*, 550 U.S. at 556.

### A. Breach of Contract (Count 1)

In Count 1 of the Complaint, Plaintiffs allege that Nationwide breached both the Modified AE Agreement and the IC Agreement when Nationwide terminated Frisch's agency in 2009.  Plaintiffs allege that Nationwide did not have a contractual basis for terminating the Modified AE Agreement: even if there was a "shortfall" in Frisch's production (which Frisch denies), Frisch alleges that the shortfall could not support the termination decision.  (Compl. ¶¶ 66-67.)  As for the IC Agreement, Plaintiffs allege that Nationwide breached it by unduly

interfering with Frisch's business by aggressively pressuring Mr. Frisch to pursue an "exit strategy" and terminate his agency. (*Id.* at ¶ 70.)

### 1. The Releases

Nationwide first argues that the claims alleged in the Complaint are barred by releases Frisch executed in 2007 (in the MOU) and in 2008 (in the Modified AE Agreement). In these separate releases, Frisch released Nationwide from all claims related to the AE Program. Frisch contends that neither release bars the claims in the Complaint because none of them "accrued" until "early 2009." Because each release barred only those claims that had arisen before the release's effective date, Frisch argues that the plain language of the releases dictates that neither of them presents a barrier to his claims for relief. (Pls.' Opp. 4, ECF No. 15.)

Frisch is correct with respect to the breach-of-contract claim alleged in Count 1 of the Complaint. The thrust of the allegations in Count 1 is that Nationwide breached the Modified AE Agreement in 2009 when it terminated the Agreement and ended Frisch's business relationship with Nationwide. Frisch alleges that Nationwide terminated the Modified AE Agreement based on an alleged shortfall in minimum production requirements even though such a shortfall did not actually exist. (Compl. ¶¶ 66-67.) Frisch also alleges in Count 1 that Nationwide breached the separate IC Agreement by interfering with the operation of Frisch's agency in a manner that Frisch alleges was prohibited by paragraph 1 of that Agreement. (*Id.* at ¶¶ 69-70.) Regardless of whether these alleged breaches are actionable on the merits, the Complaint alleges them to have occurred *after* the effective date of the second release signed in 2008. Thus, by the terms of each release, Frisch could not have released these claims because the claims did not accrue until Nationwide's alleged breaches of contract in 2009.

Accordingly, based on the factual allegations contained in the Complaint, neither of the releases signed by Mr. Frisch bars the breach of contract claim alleged in Count 1.

### 2. Breach of Contract: the AE Agreement

Count 1 of the Complaint alleges breaches of contract with respect to two separate contracts: Plaintiffs allege that Nationwide breached both the Modified AE Agreement *and* the separate IC Agreement. (Compl., ¶¶ 65-72.)  Nationwide argues that Count 1 is "contrary to the plain terms of the IC Agreement" because both Frisch and Nationwide had "the absolute right" to terminate their agency relationship at any time. (Defs.' Mot. 10, ECF No. 10.)  In other words, Nationwide argues that it could terminate the IC Agreement at any time, which in turn resulted in automatic termination of the AE Agreement.

Nationwide cites Section 10 of the IC Agreement, which provides: "[D]ue to the personal nature of our relationship, you or the Companies have the right to cancel the Agreement at any time with or without cause."  And in the original AE Agreement, the provision titled "Term and Termination," which survived and became part of the Modified AE Agreement, provided that termination of the IC Agreement resulted in automatic termination of the AE Agreement. (AE Agreement 7, Article 13, ECF No. 1-1.)  Since the AE Agreement terminates automatically if the IC Agreement is terminated, Nationwide argues that Frisch cannot show that Nationwide breached the AE Agreement when it terminated his agency.

Were this a case in which it was undisputed that Nationwide terminated *the IC Agreement*, which in turn terminated the AE Agreement automatically, then Nationwide's argument might pack more of a punch.  But Frisch's Complaint alleges the opposite scenario— that Nationwide terminated *the AE Agreement*, which automatically terminated the IC Agreement:

> On September 4, 2009, Mr. Gorczynski delivered a letter to Mr. Frisch titled "Notice of Cancellation of Agency Executive Program Performance Agreement and Corporate LLC Agency Agreement." The letter stated that the termination was due to "your failure to meet your Modified Minimum Production Plan subject to your AE Agreement."

(Compl. ¶ 60, ECF No. 1.)

Coupled with allegations regarding a "probation" notice issued to Frisch in March 2009 concerning shortfalls in his "minimum production requirements" under the Modified AE Agreement, Frisch's Complaint as a whole alleges that Nationwide ended the parties' contractual relationship by terminating *the Modified AE Agreement*. In other words, the principal agreement that Nationwide terminated proactively in September 2009 was the Modified AE Agreement.

Whether it was the IC Agreement or AE Agreement that was terminated *first* by Nationwide is significant. Nationwide's reply brief bears out this difference—

> [T]he Modification . . . contemplated that the at-will cancellation provision of the IC Agreement remained in full force and effect, allowing either party to sever the relationship at any time, with or without cause. If the IC Agreement was canceled, so too was the [AE Agreement].
>
> And the terms of the Modification were not at all inconsistent with this. Article 12 of the Modification merely stated that Frisch's failure to meet the requirements of the Modification—including the Modified Minimum Production Plan—"*will* result in termination of Agent's [Performance] and IC Agreements." This provision is mandatory. *If* Frisch failed to meet any provision of the Modification, then he is agreeing that his agency with Nationwide *will be* automatically terminated. But this provision did not change the fact that Frisch and Nationwide *both* had the *option* to cancel their relationship at any time for any other reason if either of them so chose.

(Defs.' Reply 5, ECF No. 21.)

Nationwide's argument for dismissal presupposes that it terminated the IC Agreement *first* and that the AE Agreement was automatically terminated as a byproduct of Nationwide's decision to cancel the IC Agreement. But the factual allegations in Frisch's Complaint, which the Court must accept as true in deciding Nationwide's Rule 12(b)(6) motion, are that

9

Nationwide canceled *the Modified AE Agreement*, citing Frisch's failure to meet the "Minimum Production Plan" set forth there. Frisch is alleging that Nationwide invoked the "mandatory" termination provision of the Modified AE Agreement.

Taking Frisch's allegations as true, Nationwide invoked the mandatory termination provision of the Modified AE Agreement even though Frisch had not failed to meet the Minimum Production Plan. If Frisch is able to prove that this was in fact true, then Nationwide could be liable for breach of contract—for terminating the Modified AE Agreement without a valid contractual basis for doing so. Count 1 of Frisch's Complaint therefore states a valid claim for relief for breach of the Modified AE Agreement.

### 3. Breach of Contract: the IC Agreement

As noted above, Count 1 of the Complaint also contains a breach-of-contract claim with respect to the IC Agreement. The Complaint does not allege that Nationwide breached the IC Agreement by terminating it in September 2009 when the Modified AE Agreement was terminated. Rather, Plaintiffs base their breach-of-contract claim with regard to the IC Agreement on Nationwide's alleged interference with the operation of Frisch's agency. (Compl. ¶¶ 69-71.) The interference allegedly violated Section 1 of the IC Agreement and reduced the profitability of Frisch's business. (*Id.*)

In its motion to dismiss, Nationwide argues that the Complaint "fails to cite a single promise of the IC Agreement that Nationwide breached." (Defs.' Mot. 12, ECF No. 10.) To the extent that Plaintiffs' Complaint pleads a breach of Section 1 of the IC Agreement, Nationwide contends: "that provision merely set forth the understanding that Frisch was operating as an independent contractor, not an employee. There is no promise by Nationwide to do anything in

these provisions, and Frisch does not allege a promise he claims Nationwide failed to perform." (*Id.*)

In the opposition to Nationwide's motion to dismiss, Plaintiffs devote their entire argument on Count 1 to arguing why the Complaint pleads a valid claim of breach *as to the AE Agreement*. (Defs.' Opp. 6-11, ECF No. 15.) Conspicuously absent from the opposition brief is any discussion of how the Complaint states a valid claim for breach of the IC Agreement, much less a response to Nationwide's motion-to-dismiss argument with regard to the IC Agreement. With Plaintiffs having failed to respond to Nationwide's argument for dismissal of the breach-of-contract claim related to the IC Agreement, the Court finds Nationwide's motion well taken. *See Savett v. Whirlpool Corp.*, No. 12-cv-310, 2012 U.S. Dist. LEXIS 124086, at *24 (N.D. Ohio Aug. 31, 2012) (dismissing a breach-of-contract count when plaintiff failed to respond to defendant's argument that plaintiff failed to properly allege a claim for relief); *see also Thomas v. Deutsche Bank Nat'l Trust Co.*, No. 2:11-cv-866, 2012 U.S. Dist. LEXIS 70148, at *18 (S.D. Ohio May 21, 2012) (accepting defendant's characterization of a plaintiff's claim in Rule 12(b)(6) motion when plaintiff failed to respond to defendant's argument for dismissal). The Court dismisses Count 1 of the Complaint to the extent it is based on an alleged breach of the IC Agreement.

### B. Breach of Covenant of Good Faith and Fair Dealing (Count 2)

In Count 2 of the Complaint, Frisch purports to allege a stand-alone claim for breach of the covenant of good faith and fair dealing. (Compl. ¶¶ 74-83.) Frisch alleges that Nationwide's termination of the Modified AE Agreement in September 2009 was the "culmination of a three-year scheme" under which Nationwide sought to "destroy" the AE Program and deprive agents of their businesses. (*Id.* ¶¶ 75, 82.)

11

Nationwide moves to dismiss Count II on the basis that Ohio law does not recognize a separate *tort* action for breach of good faith and fair dealing. (Defs.' Mot. 13, ECF No. 10.) *See Littlejohn v. Parrish*, 163 Ohio App. 3d 456, 2005-Ohio-4850, 839 N.E. 2d 49, ¶ 21.[1] In response, Frisch argues that he is not bringing a claim *in tort*. Frisch contends that Count II pleads a *contractual* claim, which he contends *is* recognized in Ohio law. (Pl.'s Opp. 11, ECF No. 15.) *See Littlejohn*, 163 Ohio App. 3d at 463. Even with the claim clarified as such, however, Nationwide argues that dismissal under Rule 12(b)(6) is appropriate because Ohio law does not recognize a stand-alone claim for breach of good faith and fair dealing, regardless of whether the plaintiff's theory sounds in contract or in tort. (Defs.' Reply 7, ECF No. 21.) Nationwide has the better of the argument with respect to the viability of Count II.

Frisch is correct that Ohio law recognizes the existence of an implied duty of good faith and fair dealing in every contract. *Littlejohn*, 163 Ohio App. 3d 456, at ¶ 21. And a party *may* maintain a *breach of contract* claim when the term allegedly breached is the implied duty of good faith and fair dealing. *Eggert Agency, Inc. v. NA Mgmt. Corp.*, No. 2:07-cv-1011, 2008 U.S. Dist. LEXIS 90830, at *11 (S.D. Ohio Aug. 12, 2008). But this recognition of the contractual duty of good faith and fair dealing does not mean that a separate cause of action for breach of good faith and fair dealing exists. And indeed, Ohio law does *not* recognize a separate claim for breach of good faith and fair dealing: to the extent breach of the implied covenant is actionable, it is part and parcel of *a breach of contract* claim and does not exist as its own stand-alone claim for relief. *See Wauseon Plaza, Ltd. v. Wauseon Hardware Co.*, 156 Ohio App. 3d

---

[1] In addition to citing Ohio law, Nationwide also argues that Pennsylvania law does not recognize a separate claim for breach of the duty of good faith and fair dealing. (Defs.' Mot. 13, ECF No. 10). *See Smith v. Lincoln Benefit Life Co.*, No. 08-01324, 2009 U.S. Dist. LEXIS 24941, at *32 n.5 (W.D. Pa. Mar. 23, 2009). The Court finds that Ohio substantive law governs the good faith and fair dealing claim in Count 2 in light of the parties' choice-of-law provision in the Modified AE Agreement. The Modified AE Agreement provides that the "Modification and the AE Agreement shall be governed by the laws of the State of Ohio." (Modified AE Agreement 13, Section 25, ECF No. 1-4.)

575, 2004-Ohio-1661, 807 N.E. 2d 953, ¶52; *Lakota Loc. Sch. Dist. Bd. of Edn.*, 108 Ohio App. 3d 637, 646, 671 N.E. 2d 578 (Ohio Ct. App. 1996); *see also McCubbins v. BAC Home Loans Servicing, L.P.*, No. 2:11-cv-547, 2012 U.S. Dist. LEXIS 5620, at *14 (S.D. Ohio Jan. 18, 2012).

In this case, Count 1 of Frisch's Complaint is a straightforward breach-of-contract claim based upon the allegedly wrongful termination by Nationwide of the Modified AE Agreement. The separate claim for breach of good faith and fair dealing in Count 2 is not maintainable as a matter of law. A breach of contract claim "subsumes a claim for breach of good faith and fair dealing." *Eggert Agency* at *14. The Court therefore dismisses Count 2 of Plaintiffs' Complaint.[2]

### C. Fraud (Count 3)

Count 3 of Plaintiffs' Complaint alleges fraud. Nationwide moves to dismiss this claim as being barred by the two-year statute of limitations applicable to fraud claims under Pennsylvania law. *See* 42 Pa. Cons. Stat. § 5524(7). The statute of limitations, although an affirmative defense, may be the basis for dismissal under Rule 12(b)(6) when the facts are definitively ascertainable from the plaintiff's complaint and conclusively establish the affirmative defense. See *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 613 (6th Cir. 2009).

In this case, Plaintiffs predicate their fraud claim on alleged misrepresentations that took place in December 2006, January 2007, and March 2007. Thus, Nationwide contends that Plaintiffs' fraud claim is time-barred because Plaintiffs did not file this lawsuit until May 2012— long after Pennsylvania's two-year statute of limitation expired. (Defs.' Mot. 14, ECF No. 10.) Nationwide also argues that Count 3 fails to state a valid claim on the merits in any event under either Pennsylvania or Ohio substantive law governing fraud claims. (*Id.* at 15.)

---

[2] Because the Court finds that Count 2 fails to state a claim as a matter of law, the Court need not consider Nationwide's argument that Count 2 is barred, in any event, by the releases signed by Mr. Frisch.

In response, Plaintiffs dispute Nationwide's choice of law. Plaintiffs argue that Ohio law governs their fraud claim, citing to the "Governing Law and Choice of Forum" clause of the Modified AE Agreement:

> It is hereby agreed by the parties that this Modification and the AE Agreement shall be governed by the laws of the State of Ohio, regardless of any conflicts of law provision requiring reference to the rules of, decision in, and/or laws of another state or sovereign nation and that any action or proceeding arising from a dispute concerning the Modification or the AE Program shall be brought in Franklin County, Ohio.

(Modified AE Agreement ¶ 25, ECF No. 1-4.) Plaintiffs argue that this choice-of-law provision is broad enough to cover claims sounding in both contract and tort. (Pls.' Opp. 13-14, ECF No. 15.) Nationwide argues, on the other hand, that the governing law portion of paragraph 25 applies only to contract claims and that the law of the place of injury presumptively applies to a tort claim. (Defs.' Reply. 11, ECF No. 21.) *See generally Ohayon v. Safeco Ins. Co. of Illinois*, 91 Ohio St. 3d 474, 747 N.E. 2d 206 (Ohio 2001). Because the alleged fraud occurred in Pennsylvania and caused Frisch's alleged injuries in Pennsylvania, Nationwide argues that Pennsylvania law must apply to the fraud claim. (*Id.* at 11-13)

As to the statute-of-limitations issue, the question of which state's law applies is significant. If Pennsylvania law applies, Plaintiffs' fraud claim is subject to a two-year statute of limitations; if Ohio law applies, the statute of limitations is four years. *See* Pa. Cons. Stat. § 5524(7); Ohio Rev. Code § 2305.09(C). When determining which state's law applies, a federal court sitting in diversity must apply the choice-of-law rules of the state in which it sits. *Miami Valley Mobile Health Servs., Inc. v. ExamOne Worldwide, Inc.*, 852 F. Supp. 2d 925, 931 (S.D. Ohio 2012) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S. Ct. 1020, 85 L. Ed. 1477 (1941)). Under Ohio law, contractual choice-of-law provisions are valid and

14

enforceable. *Id.* at 932 (citing *Schulke Radio Prod. Ltd. v. Midwestern Broad. Co.*, 6 Ohio St. 3d 436, 438-39, 453 N.E. 2d 683 (Ohio 1983)).

In arguing for the Ohio statute of limitations (four years), Plaintiffs rely first on the aforementioned choice-of-law provision in the Modified AE Agreement. But even assuming that the Court were to decide that Ohio *substantive* law governs the fraud claim in this case, the choice-of-law provision does not necessarily dictate which statute of limitations applies. As the Sixth Circuit Court of Appeals explained:

> [C]ontractual choice-of-law clauses incorporate *only substantive law*, *not procedural provisions such as statutes of limitations*. Absent an express statement that the parties intended another state's limitations statute to apply, the procedural law of the forum governs time restrictions on an action for breach, while the law chosen by the parties governs the terms of their contract.

*Cole v. Mileti*, 133 F.3d 433, 437 (6th Cir. 1998) (emphasis added); *see also Miami Valley Mobile Health*, 852 F. Supp. 2d at 932.

None of the parties argues that the agreements at issue in this case contain the "express statement" described in *Cole*. The Court must therefore determine which statute of limitations Ohio "procedural law" would apply in this case. *See Phelps v. McClellan*, 30 F.3d 658, 661 (6th Cir. 1994) (noting that statutes of limitations are considered *procedural* for purposes of a choice-of-law analysis under Ohio law).

Plaintiffs argue that this procedural law analysis cuts in favor of applying Ohio's four-year statute of limitations. In advancing this argument, Plaintiffs rely on Section 142(2) of the 1988 Revision to the Restatement (Second) of Conflict of Laws ("Restatement"). The 1988 Revision to Section 142(2) states:

> Whether a claim will be maintained against the defense of the statute of limitations is determined under the principles stated in § 6. In general, unless the exceptional circumstances of the case make such a result unreasonable:

15

>   (1) The forum will apply its own statute of limitations barring the claim.
>
>   (2) The forum will apply its own statute of limitations permitting the claim unless:
>
>   (a) maintenance of the claim would serve no substantial interest of the forum; and
>
>   (b) the claim would be barred under the statute of limitations of a state having a more significant relationship to the parties and the occurrence.

Restatement (Second) Conflict of Law § 142 (1988).

Because neither of the exceptions in Section 142(a) or (b) applies here, Plaintiffs argue that the general rule in Section 142(2) carries the day and that Ohio's four-year statute of limitations applies to the fraud claim. For its part, Nationwide disputes Plaintiffs' legal analysis. Even under the Revised Restatement, Nationwide argues that Ohio law dictates that the Pennsylvania statute of limitations apply to Frisch's fraud claim.

Though the parties do not raise the issue, the Court notes that it is an open question whether the 1988 Revision to the Restatement is Ohio law. It is true that the Ohio Supreme Court has adopted the Restatement as the governing law for Ohio conflicts issues. *Lewis v. Steinreich*, 73 Ohio St. 3d 299, 303, 652 N.E.2d 981 (Ohio 1995); *Morgan v. Biro Mfg. Co., Inc.*, 15 Ohio St. 3d 339, 341-42, 474 N.E.2d 286 (Ohio 1984). But as other judges of this Court have correctly observed, the Ohio Supreme Court has formally adopted *the 1971* version of the Restatement, not the 1988 Revision. *See Sonic Auto., Inc. v. Chrysler Ins. Co.*, No. 1:10-cv-717, 2011 U.S. Dist. LEXIS 76264, at *10 (S.D. Ohio July 14, 2011) (Dlott, J.); *Curl v. Greenlee Textron, Inc.*, 404 F. Supp. 2d 1001, 1009-10 (S.D. Ohio 2005) (Marbley, J.).

In contrast to the 1988 Revision's approach to determining which statute of limitations applies in the case of a conflict of laws, the 1971 version of the Restatement provides: "An action will be maintained if it is not barred by the statute of limitations *of the forum*, even though it would be barred by the statute of limitations of another state." Restatement (Second) Conflict

of Law § 142 (1971) (emphasis added).   Thus, while the 1971 version of the Restatement allows the statute of limitations of the forum state to control, the 1988 Revision mode of analysis more closely tracks the Restatement's general approach of applying the law of the state with "the most significant relationship" to the transaction.  *Id.* at 1010-11.

This Court need not resolve the question of whether the 1971 or 1988 version of Restatement Section 142 embodies Ohio law, as it inconsequential to the outcome here.  *See Arandell Corp. v. Am. Elec. Power*, No. 2:09-cv-231, 2010 U.S. Dist. LEXIS 96372, at *13 (S.D. Ohio Sept. 15, 2010) (Watson, J.) (declining to opine on whether the 1971 or 1988 version of the Restatement applied because resolution of the issue was "inconsequential" under the facts of that case).  Under either approach, a claim is barred if the forum state's (*i.e.*, Ohio's) statute of limitations bars the claim.  *Id.*  And here, contrary to Plaintiffs' analysis, the fraud claim is time-barred under Ohio law.

Plaintiffs rely on Ohio's four-year statute of limitations for fraud claims, set forth in Ohio Rev. Code § 2305.09(C), as the foundation for the argument that Count 3 of the Complaint is timely filed.   But Section 2305.09(C) is not the only relevant statute to examine when determining what statute of limitations Ohio applies to Plaintiffs' fraud claim.  A statute of limitations analysis in Ohio also entails an examination of Ohio's so-called "borrowing statute," which provides:

> No civil action that is *based upon a cause of action that accrued in any other state*, territory, district, or foreign jurisdiction may be commenced and maintained in this state if the period of limitation that applies to that action *under the laws of that other state*, territory, district, or foreign jurisdiction *has expired* or the period of limitation that applies to that action under the laws of this state has expired.

Ohio Rev. Code § 2305.03(B) (emphasis added).  Simply stated, the borrowing statute applies as an exception to the general statute of limitations set forth in Ohio Rev. Code § 2305.09.  *See*

17

R.C. § 2305.03(A) (reciting that the limitations period set forth in Ohio Rev. Code § 2305.04 to 2305.22 apply "[e]xcept as provided in" Section 2305.03(B)).  Thus, the borrowing statute "prevents a plaintiff from asserting a claim in Ohio if the claim would be barred by the statute of limitations in the state in which the claim accrued."  *Sonic Auto.*, 2011 U.S. Dist. LEXIS 76264, at *11.

In this case, the Court agrees with Nationwide that Frisch's fraud claim accrued in Pennsylvania.  Indeed, as Nationwide points out, each fraudulent representation alleged in the Complaint took place in Pennsylvania.  (Defs.' Reply at 11-12, ECF No. 21; Compl. ¶¶ 86-92.)  Moreover, according to the allegations in the Complaint, Frisch's reliance on Nationwide's alleged misrepresentations and the damages suffered by Frisch also occurred in Pennsylvania.  There are no allegations in the Complaint to suggest that any element of a fraud claim occurred in Ohio.  The fraud claim's only connection to Ohio appears to be that Nationwide is incorporated and headquartered in Ohio.

No matter which state's *substantive* law governs Plaintiffs' fraud claim, Ohio law dictates that Ohio's statute of limitations apply to the claims alleged here.  But contrary to Plaintiffs' position, Plaintiffs do not enjoy the benefit of a four-year statute of limitations.  Because the fraud claim accrued in Pennsylvania, the Ohio borrowing statute operates as a statutory exception to applying Ohio's normal four-year statute of limitation for Ohio fraud claims.  The borrowing statute dictates application of Pennsylvania's two-year statute of limitations.  And applying a two-year statute of limitations is fatal to Plaintiffs' fraud claim.  At the very *latest*, Plaintiffs' claims accrued when Nationwide terminated the Modified AE Agreement and IC Agreement in September 2009.  Plaintiffs did not file this action until May 14, 2012, well more than two years later.

On the face of the Complaint, Plaintiffs' action is time-barred. The Court therefore grants Nationwide's motion to dismiss Count 3 on statute-of-limitations grounds. Because of this determination, the Court need not reach Nationwide's arguments that (1) the releases signed by Mr. Frisch bar the fraud claim and (2) Plaintiffs fail, in any event, to state a claim for fraud on the merits.

### D.  Nationwide Bank

Nationwide moves to dismiss the Complaint in its entirety as to Defendant Nationwide Bank for the simple reason that the Complaint alleges no substantive claims against Nationwide Bank. (Defs.' Mot. 17, ECF No. 10.) Indeed, although Nationwide Bank is mentioned in the Complaint's statement of background facts, the Court can glean no allegation of any substantive claim for relief against the Bank.

In the opposition to the motion to dismiss, Plaintiffs do not respond to the argument that the Complaint states no claim whatsoever against Nationwide Bank. Accordingly, the Court finds the motion to dismiss well taken as to Nationwide Bank. The Court dismisses the Complaint as to Defendant Nationwide Bank.

### III.  Conclusion

For the reasons set forth above, the Court **GRANTS IN PART AND DENIES IN PART** Nationwide's motion to dismiss. (ECF No. 10.) As to Defendant Nationwide Mutual Insurance Company, the Court **GRANTS** the motion to dismiss as to Count 2 (breach of good faith and fair dealing) and Count 3 (fraud) for failure to state a claim upon which relief can be granted. As to Count 1 of the Complaint against Nationwide Mutual, the Court **DENIES** the motion to dismiss Count 1 (breach of contract) to the extent the Complaint pleads a claim for

breach of the Modified AE Agreement, but **GRANTS** the motion to dismiss Count 1 as to the alleged breach of the IC Agreement.

With respect to Defendant Nationwide Bank, the Court **GRANTS** the motion to dismiss. The Clerk of Court shall accordingly terminate Nationwide Bank as a defendant in this action.

**IT IS SO ORDERED.**

        **/s/ Gregory L. Frost**
        **GREGORY L. FROST**
        **UNITED STATES DISTRICT JUDGE**